IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD NOVOTNY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-05881 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| PLEXUS CORP., LUIS AVINA, and ) | |
| WAYNE PETERS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Novotny claims that his former employer, electronics manufacturer Plexus Corp. ("Plexus"), and two of his former supervisors, Luis Avina and Wayne Peters, subjected him to a hostile work environment and took adverse employment actions against him on account of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Novotny further claims that Plexus, Avina, and Peters discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981 ("Section 1981"). Plexus and Avina have moved to dismiss certain of Novotny's claims pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(6). (Dkt. No. 87.)[1] For the reasons stated below, Defendants' motion to dismiss is granted.

## BACKGROUND

According to his third amended complaint,[2] Novotny worked as an In Circuit Test ("ICT") Technician and as a Chassis Test Technician at Plexus's manufacturing facility in Buffalo Grove,

---

[1] Peters has yet to be served and thus does not join in the motion.

[2] For purposes of deciding this motion, the Court accepts as true all well-pleaded factual allegations set forth in the third amended complaint and views them in the light most favorable to Novotny. *See, e.g.,*

Illinois from May 2007 until October 2011. (Third Am. Compl. ¶¶ 4, 12, Dkt. No. 76.) During that time, Avina was a Department Lead and Peters was a Department Supervisor at the facility. (*Id.* ¶¶ 6–7.) Novotny claims that throughout his employment he was subjected to constant intimidation, humiliation, and discrimination because of his age and race. Specifically, he alleges that Avina and Peters regularly harassed him and treated him less favorably than Gabriel Carmona, a younger, Hispanic technician. According to Novotny, Carmona was not subjected to the same harassment and abuse that he suffered because Carmona was younger than Novotny and because both Avina (who is Hispanic) and Peters (who is Caucasian) favored Hispanic employees over white employees. Novotny claims that he was demoted, laid off, and ultimately terminated from Plexus on account of his age and race.

According to Novotny, starting in or around December 2007, certain ARCT01145, or "WOX," circuit boards started failing during Chassis testing. (*Id.* ¶ 24.) The boards were turned over to Avina for diagnosis but he was unable to solve the problem. (*Id.*) Avina attacked Novotny for not catching the WOX failure "at ICT." (*Id.* ¶ 26.) In response to this attack, Novotny pointed out to Avina and Peters that none of the WOX circuit boards had failed at ICT. (*Id.*) He also questioned why Carmona, who worked on the same boards in the same capacity as he did, was not blamed for, or even questioned about, the failure. (*Id.*) As a result of this incident, Avina and Peters began referring to Novotny as "Old Man" and making derogatory comments about his age, such "maybe someone younger could do the job better." (*Id.* ¶ 27.) In addition, after the WOX failure, Avina and Peters started regularly yelling at Novotny from across the factory, summoning him to Avina's desk for the sole purpose of humiliating him. (*Id.* ¶ 28.) During those incidents,

---

*Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

they questioned him about, and blamed him for, "whatever issues [they] would bring up." (*Id.* ¶ 29.) This harassment continued for over a year. (*Id.*)

Then, in November 2009, Avina and Peters approached Novotny and told him that he was being demoted from "Chassis test" effective immediately. (*Id.* ¶ 30.) Novotny was replaced by Yufi Ho, an Asian friend of Avina. (*Id.* ¶ 31.) Ho was placed in Chassis testing and promoted to Functional Test Technician despite having no experience in that type of work. (*Id.* ¶¶ 31–32.) According to Novotny, he was better qualified for the position than Ho, having already worked in Chassis testing for two years. (*Id.* ¶ 33.) Based on these circumstances, and the fact that Avina was involved, Novotny asserts that his demotion was racially motivated. (*Id.* ¶¶ 32–33.) He claims that he was passed over for the promotion, despite his superior qualifications, because he is white. (*Id.* ¶ 33.)

The next incident described in the complaint occurred in March 2010. (*Id.* ¶ 34.) Novotny alleges that Avina and Carmona approached him at his work station and threatened him with physical violence, repeatedly calling him "A Dumb Old Fuckin Pollock." (*Id.*) In the midst of this "attack," Novotny fled his work station in fear for his safety. (*Id.* ¶¶ 35–36.) Novotny claims that he later reported the incident—in addition to a number of other incidents involving Avina, Peters, and Carmona—to Plexus's Human Resources Department. (*Id.* ¶¶ 37–38.) But Plexus did not investigate his complaints or take any other action. (*Id.* ¶ 39.)

Novotny further alleges that Avina and Peters retaliated against him for reporting the March 2010 incident by threatening to terminate him if he failed to repair certain circuit boards. (*Id.* ¶ 44.) Specifically, in Fall 2010, another production failure occurred, this time involving ARCT01847 circuit boards. (*Id.* ¶ 40.) Novotny and Carmona initially were unable to repair the boards and thus were instructed to turn them over to Avina (*Id.* ¶¶ 40–42.) Avina spent over two

3

weeks trying to resolve the issue to no avail. (*Id.* ¶ 43.) Then one morning, Avina and Peters brought the boards back to Novotny and told him that he had until the end of the day to fix them or else be terminated. (*Id.* ¶¶ 43–45.) Carmona did not receive the same threat despite having worked on the boards in the same capacity as Novotny, and Avina did not face termination despite his inability to repair the boards. (*Id.* ¶¶ 45–46.) Novotny was ultimately able to solve the issue—thwarting Avina's and Peters's attempt to terminate him—but their threats and mistreatment continued. (*Id.* ¶¶ 44, 47.)

Then, in 2011, Plexus initiated a reduction in force ("RIF") performance assessment, using production data from July to October 2011 to identify the lowest-producing and poorest-performing technicians for termination. (*Id.* ¶ 48.) According to Novotny, Avina and Peters created a scheme to ensure that he was terminated in connection with the RIF. (*Id.* ¶¶ 118(A)–(B).) Novotny claims that he was not made aware of the performance assessment and that Avina and Peters intentionally prevented him from working during that period, thereby lowering his production and performance numbers. (*Id.* ¶¶ 48–52.) Specifically, Novotny asserts that Avina and Peters, along with Production Lead Phratiba Patel, intentionally withheld circuit boards from him during the first ICT technician shift, instead saving them to be worked on by Carmona during the second shift. (*Id.* ¶ 50.) When that tactic did not significantly impact Novotny's performance ratings as compared to Carmona's ratings, Avina and Peters informed Novotny that there was no work for him and instructed him not to return to work until advised otherwise. (*Id.* ¶ 51.) Novotny was laid off on July 18, 2011, shortly after the performance assessment period had begun. (*Id.*) Carmona, on the other hand, was retained through the full assessment period. (*Id.* ¶ 118(C).) Novotny claims that Avina and Peters, due to their age and race bias, laid him off to allow

Carmona to surpass him in production and performance so that Carmona would survive the RIF. (*Id.* ¶¶ 53, 55, 61.)

Due to the purported "lack of work" layoff, Novotny went from being the top-performing ICT technician at Plexus to the worst-performing. (*Id.* ¶¶ 57–58.) As a result, he was recommended and selected for termination as part of the RIF. (*Id.* ¶¶ 62–63.) On October 27, 2011, Plexus terminated Novotny's employment, citing the allegedly pretextual reasons of poor performance and mistreatment of co-workers. (*Id.* ¶¶ 68, 124.) Novotny was 51 years old at the time. (*Id.* ¶ 66.) He claims that his position was not eliminated but instead was "absorbed by younger workers." (*Id.* ¶ 69.) At some point after his termination, Novotny filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

With their present motion, Plexus and Avina seek to dismiss certain of the claims asserted in Novotny's third amended complaint. First, Defendants assert that any and all claims against Peters should be dismissed because Novotny has failed to serve him. In addition, they argue that any ADEA claims against Avina must be dismissed because there is no basis for individual liability under the ADEA and because Novotny did not name Avina in his EEOC charge. Finally, Defendants contend that Novotny's ADEA claims against Plexus are time-barred to the extent they occurred more than 300 days before the filing of his EEOC charge.[3]

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement must meet two threshold

---

[3] Novotny's Section 1981 claims are not addressed in the motion to dismiss and therefore will proceed regardless of the fate of the other claims.

requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## I. Novotny's Claims Against Peters

First the Court must address Novotny's failure to serve Peters. Federal Rule of Civil Procedure 4(c) requires the plaintiff in a civil action to serve a summons, along with a copy of the complaint, on each defendant within the time allowed by Rule 4(m). Fed. R. Civ. P. 4(c)(1). Under Rule 4(m), a defendant generally must be served within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). If a defendant is not served within 90 days, the court must dismiss the action against the defendant or order that service be made within a specified time. *Id.* If the plaintiff shows good cause for the failure to serve, however, the court must extend the time for service for an appropriate period. *Id.*

Novotny first filed this case *pro se* on August 16, 2013. (Dkt. No. 1.) Two years later, on August 19, 2015, the Court accepted Novotny's "corrected second amended complaint" as the third amended complaint and allowed him one final opportunity to serve the individual Defendants, including Peters. (Dkt. No. 75.) Novotny was instructed to effect personal service or

send a request for waiver of service no later than September 2, 2015, and then promptly to file proof of service or an executed waiver. (*Id.*) Novotny served Avina on September 2, 2015 (Dkt. No. 80), but has yet to serve Peters. In support of their motion to dismiss, Plexus and Avina assert that Novotny's failure to effect service of process on Peters should result in his dismissal from the case. Novotny responds that he has been unable to locate Peters because he no longer works for Plexus. According to Novotny, Peters should not be "let off the hook" simply because his whereabouts are unknown. (Pl. Memo. at 7, Dkt. No. 91.) Furthermore, Novotny believes that Plexus knows Peters's whereabouts and that he should thus be permitted to serve Peters through Plexus's defense counsel.

Defendants are correct that, despite his *pro se* status, "[a]t some point Novotny has to take responsibility for his failure to serve Peters." (*Id.*) That point is now. Novotny failed to serve Peters within 90 days of filing his original complaint, and indeed, he still has not served Peters. Novotny has not shown good cause for his failure to comply with the Court's August 19, 2015 order, and his continued inability to locate Peters does not justify a further extension of the time for service. Nor may Novotny shift the responsibility to serve Peters to Plexus and its counsel. At the time Novotny filed his sur-reply in opposition to the motion to dismiss, it had been nearly two-and-a-half years since he brought this lawsuit and over three months since the Court's August 19, 2015 order. Any "appropriate period of time" under Rule 4(m) has long passed. Peters is therefore dismissed from the case.

## II. Novotny's ADEA Claims Against Avina

Although not entirely clear, Novotny's third amended complaint appears to assert each of his claims against all three Defendants. In support of their motion to dismiss, Plexus and Avina contend that, to the extent Novotny seeks to state ADEA claims against Avina (as the only

7

remaining individual Defendant in the case), such claims must be dismissed because there is no basis for individual liability under the act and because Novotny did not name Avina in his EEOC charge. In his response brief, Novotny states that he does not seek to impose individual liability against Avina (or Peters) under the ADEA. Indeed, he acknowledges that such liability does not exist and represents that he seeks to impose individual liability only under Section 1981.

Despite those apparent concessions, in his sur-reply, Novotny contends that individuals can in fact be held liable under the ADEA, citing a number of cases from the early 1990s. Since that time, however, it has become increasingly well-established that there is no basis for individual liability under the ADEA. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001). Therefore, to the extent Novotny seeks to pursue ADEA claims against Avina, those claims are dismissed and the Court need not address the parties' arguments regarding Novotny's failure to name the individual Defendants as respondents in his EEOC charge. This leaves Novotny's Section 1981 claims against Avina as the only remaining claims against the individual Defendants.

### III. Timeliness Of Novotny's ADEA Claims

To bring a civil suit under the ADEA, a plaintiff must first file a timely charge of discrimination with the EEOC. 29 U.S.C. § 626(d). In Illinois, an EEOC charge must be filed within 300 days after the alleged unlawful employment practice occurred. *See, e.g., Hamilton v. Komatsu Dresser Indus., Inc.*, 964 F.2d 600, 603 (7th Cir. 1992); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004); *Fiona Feng Chen v. Nw. Univ.*, 175 F. App'x 24, 26 (7th Cir. 2005). Any alleged discriminatory act occurring more than 300 days prior to the filing of an EEOC charge is not actionable. *See Fiona Feng* Chen, 175 F. App'x at 26. Defendants are

therefore correct that Novotny's ADEA claims against Plexus are time-barred to the extent that they occurred outside the 300-day window.

The third amended complaint does not identify the date on which Novotny filed his EEOC charge. Instead, Novotny asserts generally that the alleged discriminatory acts took place within the 300-day timeframe. Defendants note that, in his first amended complaint, Novotny alleged that he filed a charge with the EEOC on August 16, 2012. According to Plexus and Avina, while Novotny may have filed an EEOC intake questionnaire on or around August 16, 2012 he did not file an actual charge until August 31, 2012—which is the date Novotny listed on the charge, although the EEOC stamp reflects a date of September 7. Nevertheless, for purposes of the instant motion, Defendants accept the August 16, 2012 date and assert that Novotny's ADEA claims are therefore time-barred to the extent they occurred before October 22, 2011.[4]

Defendants argue that to the extent Novotny's ADEA claims are based on his July 18, 2011 layoff or any alleged adverse employment action occurring prior to that date, the claims must be dismissed as untimely. As to Novotny's hostile work environment claim, Defendants assert that the alleged harassment necessarily occurred before Novotny was laid off on July 18, 2011, as he did not attend work—and thus could not have been harassed—after that date. Therefore, none of the alleged harassment falls within the 300-day window and Novotny's hostile work environment claim must be dismissed. According to Defendants, this leaves Novotny's October 27, 2011 termination as the only potentially timely employment action at issue.

In response, Novotny vaguely refers to having suffered two or three separate adverse employment actions—including the "lack of work" layoff—within the 300-day timeframe. In his sur-reply, he asserts that the following four actions are timely pursued: (1) "[his] demotion

---

[4] Novotny argues that the correct date is October 21, 2011. The one-day discrepancy makes no difference for purposes of the present motion.

evidenced by a decrease in wage or salary, a material loss of benefits, [and] significantly diminished material responsibilities," (2) his July 18, 2011 layoff, (3) his October 27, 2011 termination, and (4) Plexus's failure to notify him of the RIF. (Pl. Sur-Reply at 10, Dkt. No. 101.) It is unclear whether the first action listed references Novotny's 2009 demotion from Chassis testing or his 2011 layoff. If the former, it is clearly outside the 300-day window. If the latter, it is repetitive of the second listed employment action. That action—Novotny's layoff—clearly falls outside the applicable time period, as does Plexus's alleged failure to notify Novotny of the RIF (which occurred before the layoff). Therefore, the only potentially actionable adverse employment action for purposes of Novotny's ADEA claims is his termination.

To avoid this result, Novotny suggests that the July 18, 2011 layoff constitutes a continuing violation and is therefore timely. (*See, e.g.*, Pl. Memo in Support of Opp. to Mot. to Dismiss at 3, Dkt. No. 91 (asserting that Defendants' actions in relation to the "lack of work" layoff started on July 18 and continued until the October 27 termination).) That argument fails for two reasons. First, under federal employment discrimination statutes, a discrete discriminatory act occurs on the day that it happens and a plaintiff must file his or her charge within 300 days of that date. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (addressing claims brought under Title VII). A layoff is an easily identifiable discrete act. *See id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination . . . constitutes a separate actionable unlawful employment practice.") (internal quotation marks omitted). Because Novotny did not file his EEOC charge within 300 days of the July 18, 2011 layoff, his claim based on that allegedly discriminatory act is time-barred.

Second, discrete discriminatory acts are not actionable if time-barred, even if they are related to acts that fall within the statutory period. *Id.* at 113. *See also Washington v. Am. Drug Stores, Inc.*, 119 F. App'x 3, 5 (7th Cir. 2004) (the continuing violation doctrine does not allow deferred suit on discrete discriminatory acts); *Anbudaiyan v. Ill. Dep't of Fin. & Prof'l Regulation*, No. 11 C 8893, 2012 WL 2525696, at *4 (N.D. Ill. June 29, 2012) (finding no appropriate basis to consider separate promotion denials as part of a single continuing violation of Title VII or the ADEA because a failure to promote—a discrete act that is easy to identify—constitutes a separate actionable unlawful employment practice). Therefore, to the extent Novotny seeks to utilize the continuing-violation doctrine to save his untimely layoff claim by connecting the layoff to his later termination, that attempt fails.[5]

With respect to his hostile work environment claim, Novotny, again relying on the continuing-violation doctrine, points to case law holding that as long as an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for purposes of determining liability. Novotny argues that the other ADEA violations alleged in his complaint, including his termination, are acts contributing to his hostile work environment claim that occurred within the filing period. But those discrete acts—only one of which is timely—at most support his other ADEA claims; they do not do not contribute to his hostile work environment claim. *See Wallin v. THCChicago, Inc.*, No. 99-3173, 2004 WL 2535283, at *7 (N.D. Ill. Sept. 23, 2004) (plaintiff's firing was not an act creating a hostile environment but was an example of allegedly disparate treatment and was therefore not part of the

---

[5] In his sur-reply, Novotny raises new arguments to support various theories of a continuing violation, relying on *Stewart v. CPC International, Inc.*, 679 F.2d 117 (7th Cir. 1982). However, the allegations in the third amended complaint do not support those arguments and Novotny cannot amend his complaint through his response briefs. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). Regardless, the Court finds the arguments unconvincing.

same hostile environment claim). Because Novotny cannot point to any harassment—as opposed to an adverse employment action—that took place within the 300-day period, his hostile work environment claim fails. *See, e.g., Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (affirming the district court's grant of summary judgment on plaintiff's Title VII hostile work environment claim because plaintiff attended only six days of work within the 300-day time period and did not identify any incident occurring on those six days that suggested the existence of a hostile work environment).[6]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss certain of the claims set forth in Novotny's third amended complaint (Dkt. No. 87) is granted. All claims against Peters are dismissed without prejudice due to lack of service of process, while any ADEA claims against Avina are dismissed with prejudice for failure to state a claim. In addition, Novotny's ADEA claims against Plexus survive only as they relate to his termination. As a result, the remaining claims in this case consist of Novotny's ADEA claim against Plexus for discriminatory termination and his Section 1981 claims against Plexus and Avina.

ENTERED:

Dated: March 23, 2016

_____
Andrea R. Wood
United States District Judge

---

[6] The Court does not mean to suggest that Novotny's allegations of harassment—or his allegations of adverse employment actions occurring outside the 300-day window—are entirely out of bounds for purposes of proving his surviving ADEA claim. Novotny might be able to use those allegations as evidence to support his timely claim (*e.g.*, to lend support to his theory that Plexus's proffered reasons for his termination were pretext for age or race discrimination).