IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD NOVOTNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-05881 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| PLEXUS INC. AND LUIS AVINA, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendants Plexus Inc. and Luis Avina's motion for summary judgment [138] is granted. The Clerk is directed to enter Judgment in favor of Defendants. All pending motions and hearing dates are stricken. Civil case terminated. See the accompanying Statement for details.

**STATEMENT**

I. **Background Facts**[1]

Defendant Plexus Inc. hired Plaintiff Edward Novotny in May 2007 as a technician at its Chicago-area facility located in Buffalo Grove, Illinois. (Defs.' 56.1 Stmt. ¶ 6, Dkt. No. 139.) In October 2011, Plexus terminated Novotny's employment. (*Id.* ¶ 7.) Afterwards, Novotny filed a charge claiming age and disability discrimination with the Equal Employment Opportunity Commission. (*Id.* ¶ 8.) The Equal Employment Opportunity Commission subsequently issued a right-to-sue letter. (*Id.* ¶ 9.) On August 16, 2013, Novotny filed an initial complaint in this Court against Plexus and Luis Avina, a Plexus Inc. employee. (*Id.* ¶¶ 3, 10.) During the course of the litigation, the parties have briefed three motions to dismiss and Novotny has filed three amended complaints. (*Id.* ¶¶ 10–13.) The Court granted Defendants' partial motion to dismiss the third amended complaint, such that the remaining claims in this case consist of Novotny's claim against Plexus for discriminatory termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and his race discrimination claims pursuant to 42 U.S.C. § 1981 claims against Plexus and Avina. (*Id.* ¶ 24.)

---

[1] Novotny has not complied with Local Rule 56.1(b), which states that the party opposing summary judgment must file "a concise response to the movant's statement [of material facts] that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Novotny has not denied Plexus's statements at all. Therefore, Novotny is deemed to have admitted all facts in Plexus's statement of undisputed facts. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

On February 18, 2016, three years after filing his initial complaint in this case, Novotny filed a petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. (*Id.* ¶ 14.) Throughout his bankruptcy proceedings, Novotny was represented by the law firm Geraci Law. (*Id.* ¶ 15.) In Schedule A/B of his bankruptcy petition, Novotny was required to list all of his assets. (*Id.* ¶ 16.) Notably, in paragraph 33 of Schedule A/B, Novotny was directed to list any "[c]laims against third parties, whether or not [he had] filed a lawsuit or made a demand of payment." (*Id.* ¶ 17.) Examples of such third-party claims, as noted in paragraph 33, include "[a]ccidents, employment disputes, insurance claims, or rights to sue." (*Id.*) In response to that question on the form, Novotny stated that he had "a potential workers compensation claim against former employer Briggs and Stratton." (*Id.*) In paragraph 34 of the same form, Novotny was directed to list "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights." (*Id.* ¶ 18.) In his response, Novotny stated that he had no other claims. (*Id.*)

On May 24, 2016, the bankruptcy court entered an order discharging Novotny's unsecured debts, and a couple of days later the court closed the case. (*Id.* ¶¶ 21, 22.) At no point prior to discharge did Novotny inform the bankruptcy court, the bankruptcy trustee, or his creditors of the existence of his claims against Defendants in this matter. (*Id.* ¶ 23.) And when asked in Defendants' first set of interrogatories during discovery whether he had ever filed for bankruptcy, Novotny stated that he "consider[ed] this privileged information and objects to this request as not pertaining to the case at hand." (Defs.' Reply, Hawley Decl., Ex. A at 13, Dkt. No. 159.)

## II. Standing

In their summary judgment motion, Defendants argue that Novotny lacks prudential standing to pursue his claims in this case because he is not the real party in interest.

Initially, Defendants argued that Novotny lacked standing because the asserted claims belong to his Chapter 7 bankruptcy estate. In Chapter 7 bankruptcy, the "debtor surrenders his assets . . . to his bankruptcy estate for equitable distribution to his creditors. In exchange he receives discharge from his debts and a fresh start." *In re Veluchamy*, 879 F.3d 808, 816 (7th Cir. 2018). The filing of a petition for bankruptcy creates the estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In other words, upon filing a petition for Chapter 7 bankruptcy, all of a debtor's property, including his legal claims, become the property of the bankruptcy estate. *See In re Polis*, 217 F.3d 899, 901 (7th Cir. 2000) ("Although a cause of action is perhaps not 'personal property' in the usual sense, the definition in the Bankruptcy Code of property belonging to the debtor's estate as including (with irrelevant exceptions) 'all legal or equitable interests of the debtor in property as of the commencement of the case,' 11 U.S.C. § 541(a)(1), has uniformly been interpreted to include causes of action."). Therefore, all of Novotny's causes of action that had accrued at the time he filed his Chapter 7 petition on February 18, 2016 became property of the bankruptcy estate, and only the bankruptcy trustee can prosecute those claims. *In re Enyedi*, 371 B.R. 327, 332 (Bankr. N.D. Ill. 2007). However, if a trustee abandons a cause of action, then standing reverts to the debtor and he can pursue a cause of action for his own benefit. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("But if the estate (through the trustee) abandons the claim, then the creditors no longer have an interest, and with the claim in the debtor's hands the possibility of judicial estoppel comes to the fore.").

Shortly after Defendants filed their motion for summary judgment, Novotny filed a motion with the bankruptcy court seeking to reopen his Chapter 7 case so that he could amend his disclosure of assets to include this lawsuit. (Pl.'s Resp., Ex. A at 1, Dkt. No. 156.) The bankruptcy court reopened the case and authorized the appointment of a Chapter 7 trustee. (*Id.* at 2.) On November 2, 2017, the trustee for Novotny's bankruptcy estate filed a report with the bankruptcy court abandoning the claims in Novotny's amended petition. (*See* Defs.' Reply, Hawley Decl. ¶ 8, Dkt. No. 159.) Because the Chapter 7 trustee has abandoned the claims in this suit, standing reverted back to Novotny. Defendants nonetheless argue in their reply brief that summary judgment is proper because Novotny repeatedly admits he lacks standing in his response to the summary judgment motion. However, drawing all reasonable inferences in Novotny's favor and taking his *pro se* status into consideration, the Court will not construe his arguably inadvertent statements regarding the legal doctrine of standing as "admissions" worthy of a summary judgment ruling—particularly given that his claims are precluded anyway under the doctrine of judicial estoppel.

### III. Judicial Estoppel

Defendants alternatively argue that even if Novotny has standing to pursue the claims against them, he still should be judicially estopped from recovering on undisclosed claims. Judicial estoppel is an equitable doctrine that "prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding." *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). As the Seventh Circuit jas noted, "[p]lenty of authority supports the . . . conclusion that a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim." *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006) (listing cases). Novotny filed for bankruptcy but did not inform the bankruptcy court, the Chapter 7 trustee, or his creditors of the claims he is asserting here. Consequently, Novotny obtained a discharge of debts based on inaccurate information.

Novotony admits that he failed to disclose his claims to the bankruptcy court, but argues that judicial estoppel should not apply because his failure to disclose was inadvertent. Indeed, other courts have held that a failure to disclose may be considered inadvertent if the debtor did not know about the undisclosed claims or had no motive for concealing the claims. *See, e.g.*, *Esparza v. Costco Wholesale Corp.*, No. 10-cv-05406, 2011 WL 6820022, at *5 (N.D. Ill. Dec. 28, 2011); *Viette v. Hosp. Staffing Inc.*, No. 12-cv-2327, 2013 WL 2450101, at *3 (N.D. Ill. June 5, 2013); *Smith v. Am. Gen. Life Ins. Co.*, 544 F. Supp. 2d 732, 735 (C.D. Ill. 2008).

With respect to Novotny's knowledge of the undisclosed claims, he filed this age discrimination lawsuit in 2013. Although three years passed between filing of the complaint against Defendants and his filing for bankruptcy, Novotny actively litigated his case during that time—he filed three amended complaints, contested three motions to dismiss, and actively engaged in discovery. Novotny's frequent and active litigation demonstrates that he did not forget about this case, and was fully aware of the claims, when he filed for bankruptcy. Indeed, Defendants presented credible evidence that Novotny took active steps to conceal the undisclosed claims. In Paragraph 33 of Schedule A/B, Novotny was required to list any claims against third parties. Novotny disclosed only a "potential workers compensation claim against former employer Briggs and Stratton." (Defs.' 56.1 Stmt. ¶ 17, Dkt. No. 139.) It does not make

sense for Novotny to have inadvertently listed a "potential" workers compensation lawsuit but not list this case, which he actively litigated for three years prior to filling out the form. Novotny argues that he failed to disclose his claims against Defendants because they were "extremely remote and unlikely." (Pl.'s Resp. at 4, Dkt. No. 156.) But surely Novotony's active case against Defendants was more likely to result in a recovery than his "potential" workers compensation claim against Briggs and Stratton. And Novotny's assertion that he nonetheless considered recovery "remote and unlikely," is belied by his active litigation of this case over three years. Furthermore, Novotny was represented by counsel in this bankruptcy proceeding; thus this was not a situation in which an inexperienced *pro se* filer made an inadvertent mistake on his bankruptcy schedules.

As for Novotny's motive to conceal the claims, he stood to receive any and all of the proceeds from this case. Even after reopening his bankruptcy proceeding, only he stands to benefit from the successful resolution of his discrimination claims. Because the trustee has abandoned these claims, Novotny's creditors will receive nothing. Had Novotny converted his Chapter 7 bankruptcy into a Chapter 13 bankruptcy, thereby committing himself to paying off his debt and ensuring that his creditors would receive payment from this litigation, the Court might have deemed it equitable to deny judicial estoppel. *See Lujano v. Town of Cicero*, No. 07-cv-04822, 2012 WL 4499326, at *14 (N.D. Ill. Sept. 28, 2012) ("Applying judicial estoppel now would be inequitable since it would further deprive the creditors of a chance to recover on their claims because of Lujano's earlier nondisclosure."). But Novotny has not attempted to convert the bankruptcy to Chapter 13 so his creditors can benefit, and instead hopes to keep the entire judgment for himself. Consequently, not only did Novotny have a motive to conceal his claims during the bankruptcy proceedings, but his decision not to convert the bankruptcy case means no creditor will benefit from the continued litigation of this matter.

One final equitable consideration is that Novotny only reopened his bankruptcy case to amend the schedule *after* Defendants filed their summary judgment motion. As other courts have noted, failing to apply judicial estoppel in situations where the debtor discloses assets only after he is caught concealing them could create an "escape hatch" that "would only encourage debtors to conceal assets." *Viette*, 2013 WL 2450101, at *4. Judicial estoppel is an equitable doctrine designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). If Notovny is allowed to proceed with his case and receives a judgment in his favor, his deceit would allow him to reap the benefits of the judgment without having to pay his creditors. With the integrity of the judicial process in mind, this Court is unwilling to incentivize debtors such as Novotny to conceal their assets. Consequently, Defendants' motion for summary judgment is granted.

Dated: March 8, 2018

_____
Andrea R. Wood
United States District Judge

4